THE STATE, EX REL. HARRY WOLSKY STAIR BUILDER, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. Harry Wolsky Stair Builder, Inc., *v.* Indus. Comm. (1991), 58 Ohio St. 3d 222.]

(No. 90-15—Submitted November 13, 1990—Decided April 3, 1991.)

classifications, amount of wage expenditures, premium rates and/or amount of premium. No adjustments, however, shall be made in an employer's account which result in reducing the amount of premium below the amount of contributions made by the employer to the fund for the periods involved, except in reference to adjustments for the semi-annual and/or adjustment periods ending within twenty-four months immediately prior to the beginning of the current payroll reporting period, when such errors affecting the reports and the premium are brought to the attention of the Commission and Bureau by an employer through written application for adjustment or found by the Commission and Bureau."

Appellant initially contends, in essence, that a bureau overpayment error negates Ohio Adm. Code 4121-7-17(C)'s two-year refund limitation period and entitles appellant to full restitution. This contention lacks merit. Whether an error creates an underpayment or overpayment, adjustment is limited to the period "twenty-four months immediately prior to the beginning of the current payroll reporting period * * *." No distinction is made between employer and bureau error, nor is a different refund limitation period created for the latter.

The bureau, in promulgating this rule, perhaps anticipated the inevitability of error, including its own. Had it desired to include the exemption appellant advances, it could have done so. Instead, the bureau provided that all errors, regardless of by whom and in whose favor, would be treated uniformly.

Appellant next asserts that an equal protection violation ensues from overassessment since "similarly situated manufacturers competing with Appellant were afforded more .

*Neal Dillon Co., L.P.A.,* and *Richard M. Wallar,* for appellant.

*Lee I. Fisher,* attorney general, *Jetta Mencer* and *Michael L. Squillace,* for appellees.

*Per Curiam.* Ohio Adm. Code 4121-7-17(C) states in part:

"* * * The Commission and Bureau shall also have the right to make adjustments as to classifications, allocation of wage expenditures to

favorable (lower) rates." This, too, is unpersuasive.

An appropriate equal protection analysis appears in *Cleveland* v. *Indus. Comm.* (1983), 8 Ohio App. 3d 7, 8 OBR 7, 455 N.E. 2d 1085. There, the commission attempted to collect significant underpayments made by the city of Cleveland more than two years prior. Cleveland challenged the commission's actions, alleging, *inter alia,* a violation of equal protection.

The trial court found, and the appellate court agreed, that "[n]o party, other than Plaintiff, has ever been billed or collected from after a two year period to the knowledge of all the witnesses." *Id.* at 8, 8 OBR at 9, 455 N.E. 2d at 1087. The trial court's determination that the commission " 'singled out the City of Cleveland for payment of previously underbilled Workers' Compensation premiums more than two years after the rate effective for the year 1976 was established' " sufficiently supported "the findings that plaintiff received disparate treatment in violation of the foregoing constitutional provisions." *Id.* at 10, 8 OBR at 11, 455 N.E. 2d at 1089.

In the case at bar, there is no evidence that the commission has ever refunded overpayments made in excess of two years to other employers. Because appellant has not demonstrated such unequal treatment, its equal protection contention fails.

Appellant's due process argument is similarly unconvincing, since the allegations on which it is premised are inaccurate. First, appellant did appeal the classification assessment on two occasions — first to the commission's adjudicating committee on September 26, 1986 and then to the commission on May 21, 1987. Second, there is no evidence of record that either the commission or the bureau ever denied a request for hearing. To the contrary, the record does not show that appellant ever requested one. We thus find no evidence to support the claimed due process violation.

Finally, appellant argues that the bureau has a fiduciary duty to it that requires the bureau to make full restitution. This is again incorrect. Appellee's sole fiduciary responsibility is to the State Insurance Fund. *State, ex rel. Weimer,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 159, 16 O.O. 3d 174, 404 N.E. 2d 149. Appellee occupies no such relationship to any employer, including appellant.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. I dissent from the unfair result reached by the majority in this case. Appellant, Harry Wolsky Stair Builder, Inc., a foreign corporation, paid its premiums in good faith into the Ohio State Workers' Compensation Insurance Fund, from February 21, 1978 through July 27, 1984. The majority concedes that appellant is entitled to the overpayments made after December 31, 1981, but invokes Ohio Adm. Code 4121-7-17(C) to deny appellant its proper recoupment.

Clearly, Ohio Adm. Code 4121-7-17(C) is not applicable in this case. Ohio Adm. Code 4121-7-17(C) only applies to situations where the Industrial Commission and Bureau of Workers' Compensation make "* * * adjustments as to classifications, allocation of wage expenditures to classifications, amount of wage expen-

ditures, premium rates and/or amount of premium." In this instance, the bureau overcharged the appellant from February 21, 1978 through December 31, 1981. The appellant's status as a wooden staircase manufacturer never changed. The bureau mistakenly overcharged appellant for premiums corresponding to a wooden pallet manufacturer, although informing appellant that its status was a wooden staircase manufacturer. There could be no adjustment by the bureau since its excessive charge for premiums was void *ab initio.*

Assuming *arguendo* that Ohio Adm. Code 4121-7-17(C) is applicable to the facts in this case, the majority opinion reaches an erroneous result on two grounds. First, applying Ohio Adm. Code 4121-7-17(C) in the manner prescribed by the majority violates both Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.[1] The appellant was informed by the bureau, during the period at issue, that its premiums conformed to its classification. The appellant had no reason to object to the premiums, while assuming that the state properly charged it for insurance coverage. When the appellant was informed of the bureau's erroneous calculation of premiums for the prior six years, it immediately sought a refund of the overcharged premiums. By applying Ohio Adm. Code 4121-7-17(C) to deny appellant its overpayment, the majority, in effect, has taken appellant's property without the benefit of due process of law. And, the difference in treatment by the bureau toward appellant and other similarly situated wooden staircase manufacturers is tantamount to a denial of equal protection under the law.

Furthermore, in applying Ohio Adm. Code 4121-7-17(C), the majority has retroactively impaired appellant's substantive right to obtain a refund.[2] The time limit for corrections of inaccuracies affecting employers' premium rates under Ohio Adm. Code 4121-7-17 (C) became effective on November 26, 1979 (see Ohio Adm. Code 4121-7-28 [B]); however, the majority has foreclosed the appellant from seeking redress prior to January 1, 1982. The result is that appellant had to have known about the bureau's error before the lapse of the reporting period covering the first half of 1980. That is to say, subsequent to the promulgation of the established limitation period, on November 26, 1979, appellant had until June 30, 1980 to recognize that it was being overcharged, but appellant

---

[1] The Fourteenth Amendment to the United States Constitution provides in pertinent part:

"* * * nor shall any State deprive any person of * * * property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Section 2, Article I of the Ohio Constitution provides in relevant part:

"All political power is inherent in the people. Government is instituted for their [the people's, including corporations'] equal protection and benefit * * *."

[2] With respect to retroactive laws, Section 28, Article II of the Ohio Constitution provides:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."

during this entire period was informed by the bureau that its premiums were in line with the classification recognized by the parties (*i.e.*, a wooden staircase manufacturer).

Thus, for the foregoing reasons, I respectfully dissent.

WRIGHT, J., concurs in the foregoing dissenting opinion.