[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio-Kentucky-Indiana Regional Council of Govts. v. Bur. of Workers' Comp.*, Slip Opinion No. 2022-Ohio-3058.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

THE STATE EX REL. OHIO-KENTUCKY-INDIANA REGIONAL COUNCIL OF GOVERNMENTS, APPELLANT, *v.* BUREAU OF WORKERS' COMPENSATION, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio-Kentucky-Indiana Regional Council of Govts. v. Bur. of Workers' Comp.*, Slip Opinion No. 2022-Ohio-3058.]**

*Workers' compensation—Ohio Bureau of Workers' Compensation assigns each Ohio employer to a classification based on the degree of hazard in the employer's business—A writ of mandamus will issue when the bureau does not explain its decision well enough to inform the parties and a court why a particular classification most closely describes the business with respect to its degree of hazard—Court of appeals' judgment reversed and limited writ granted.*

(No. 2021-0889—Submitted June 14, 2022—Decided September 6, 2022.)

APPEAL from the Court of Appeals for Franklin County,

No. 20AP-56, 2021-Ohio-2001.

_____

**Per Curiam.**

**{¶ 1}** For purposes of setting workers' compensation premium rates, appellee, the Ohio Bureau of Workers' Compensation, assigns each Ohio employer to a classification based on the degree of hazard in the employer's business. The bureau had long assigned appellant, the Ohio-Kentucky-Indiana Regional Council of Governments ("OKI"), to two classifications applicable to private employers. But in 2018, the bureau reclassified OKI as a "special public authority," which is a type of "public-employer taxing district," resulting in a much higher premium. OKI sought a writ of mandamus from the Tenth District Court of Appeals ordering the bureau to return OKI to its previous classifications. The Tenth District denied the writ, and OKI appealed.

**{¶ 2}** We conclude that the bureau abused its discretion by classifying OKI as a special public authority without explaining why that classification most closely describes OKI's business with respect to its degree of hazard. We therefore reverse the Tenth District's judgment and grant a limited writ of mandamus, as explained in more detail below.

## I. BACKGROUND

### A. Classification of occupations

**{¶ 3}** Article II, Section 35 of the Ohio Constitution empowers the bureau to "classify all occupations, according to their degree of hazard" and to "fix rates of contribution" to Ohio's insurance fund according to those classifications. Under that grant of authority, R.C. 4123.29 requires the bureau to "[c]lassify occupations or industries with respect to their degree of hazard and determine the risks of the different classes," R.C. 4123.29(A)(1), and to "[f]ix the rates of premium of the risks of the classes," R.C. 4123.29(A)(2)(a).

**{¶ 4}** The bureau sets forth the occupational classifications in a manual. *See, e.g.*, *Ohio State Workmen's Compensation Insurance Fund Manual* (1946). Because each classification is assigned a numerical code, the classifications are

sometimes referred to—including in the record and briefing in this case—as "manual classifications," "manual numbers," or "manual codes."

{¶ 5} The bureau assigns each employer in Ohio to a classification and assigns each classification a premium rate. R.C. 4123.29; Ohio Adm.Code 4123-17-08(A) and (D). The assignment to a particular classification therefore determines the rate of an employer's workers' compensation premiums.

{¶ 6} The bureau's task is to "assign the one basic classification that best describes the business of the employer." Ohio Adm.Code 4123-17-08(D). In general, "[i]t is the business that is classified, not the individual employments, occupations or operations within the business." *Id*. For example, a business with a primary activity of making furniture might be classified under "furniture manufacturing," even though not all its employees work directly in the furniture-manufacturing process. *See* Ohio Adm.Code 4123-17-08(B)(1). "If no basic classification clearly describes the business, the classification that *most closely describes* the business must be assigned." (Emphasis added.) Ohio Adm.Code 4123-17-08(D). In addition, some common job duties—such as clerical office duties—have their own "standard exception classifications," Ohio Adm.Code 4123-17-08(B)(1), that apply to those employees separate from the business's basic classification; but every business is assigned a basic classification, *see* Ohio Adm.Code 4123-17-08(A) through (B).

## B. OKI

{¶ 7} OKI was created in 1967 as the Ohio-Kentucky-Indiana Regional Planning Authority. In its current iteration, OKI operates according to articles of agreement adopted under R.C. Chapter 167, Ky. Rev. Stat. 65.210 et seq., and Ind. Stat. 36-1-7 et seq. As stated in its articles of agreement, OKI's purpose is "[t]o be a public body and to provide such services within the OKI Region as applicable law will permit and the Board of Directors or the Executive Committee require in order to foster and develop better coordination, protection and satisfaction of the

interests and needs of the public governing bodies within the OKI Region." (The OKI Region is the entire area of the Ohio, Kentucky, and Indiana counties that are members of OKI. The 2006 articles of agreement were approved by Butler, Clermont, Hamilton, and Warren Counties in Ohio; Boone, Campbell, and Kenton Counties in Kentucky; and Dearborn County in Indiana.)

{¶ 8} OKI's specific focus is "[t]o provide coordinated planning services" to "federal, state and local governments, their political subdivisions, agencies, departments, instrumentalities, special districts and private agencies or entities" relating to a "regional transportation and development plan within the OKI Region," including planning that affects "land use, housing, community facilities, capital improvements, metropolitan and regional development, transportation facilities, health, welfare, safety, education, economic conditions, water supply and distribution facilities, waste treatment and disposal, water and land conservation," and the like. Some of OKI's funding comes from its member counties; some comes from other public and private entities.

## C. OKI's classification history

{¶ 9} In 1969, OKI applied to the bureau for the classification of its industry and the fixing of its workers' compensation premium. The bureau assigned OKI what was then manual classification 8747, "council of government staff members office and away from office."

{¶ 10} In 1970, OKI requested a new classification for its growing number of employees who worked exclusively in the office with no away-from-office duties. The bureau declined the requested change, keeping all of OKI's employees under manual classification 8747.

{¶ 11} In 1987, OKI again questioned the classification of various groups of its employees. After conducting a rating inspection, the bureau retained manual classification 8747 (then denominated as 8747-07) for some of OKI's employees

but added manual classification 8810-04, "clerical office employees, no outside duties," for others.

{¶ 12} In 1995, the bureau performed another audit of OKI and retained manual classifications 8747 and 8810.

{¶ 13} In 1997, the bureau notified OKI that it was in the process of converting its manual classifications to those established by the National Council of Compensation Insurance ("NCCI"). (The Ohio General Assembly mandated this change in 1993. Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 2990, 3113.) The classifications the bureau assigned to OKI under the NCCI manual were 8742, "salespersons or collectors—outside," and 8810, "clerical office employees."

{¶ 14} In 2010, the bureau again audited OKI and again retained the same manual classifications: 8742 and 8810.

{¶ 15} In 2018, the bureau told OKI that its original NCCI classifications, which were for private employers, had been made in error and that the bureau would transition OKI to manual classification 9443, "special public authorities, excluding transit authorities: all employees & clerical, clerical telecommuter, salespersons, drivers." This reclassification would make OKI's workers' compensation premium 14 times higher than it had been.

### D. Administrative proceedings

{¶ 16} OKI filed a complaint objecting to the reclassification, which the bureau denied, concluding that OKI "does meet the criteria of a public employer, specifically a special public authority." OKI protested that determination, but after a hearing, an adjudicating committee upheld it. OKI appealed to the administrator's designee, who also upheld the reclassification.

### E. Mandamus action

{¶ 17} OKI then filed this mandamus action in the Tenth District Court of Appeals, alleging that the bureau abused its discretion by assigning OKI to a

manual classification that does not best describe OKI's business. OKI sought a writ ordering the bureau to return it to its previous classifications.

{¶ 18} A magistrate concluded that the bureau abused its discretion because "OKI is a private employer and therefore may not be assigned [m]anual [classification] 9443." 2021-Ohio-2001, 174 N.E.3d 55, ¶ 58. However, the court of appeals sustained the bureau's objections to the magistrate's conclusions of law and concluded that OKI was not a private employer and that the bureau did not abuse its discretion by determining that manual classification 9443 was the best fit for OKI's business. *Id.* at ¶ 14-15, 30-32. The Tenth District therefore denied the writ. *Id.* at ¶ 33. OKI appealed that judgment to this court as of right.

## II. ANALYSIS

{¶ 19} OKI asserts two propositions of law. In the first, it argues that the bureau arbitrarily, capriciously, and discriminatorily reclassified it as a "special taxing district," because OKI is neither a public employer nor a taxing district, both of which it says are required criteria for that classification. In the second proposition of law, it argues that the bureau did not explain its reasoning for the reclassification.

{¶ 20} In response, the bureau argues that manual classification 9443 is the classification that best describes OKI's business and that it has explained that OKI need not be a taxing district to fit into the classification.

### A. Mandamus standard

{¶ 21} To be entitled to a writ of mandamus, OKI must show that the bureau abused its discretion, i.e., that the reclassification was arbitrary, capricious, or discriminatory. *See State ex rel. Progressive Sweeping Contrs., Inc. v. Ohio Bur. of Workers' Comp.*, 68 Ohio St.3d 393, 396, 627 N.E.2d 550 (1994). In addition, we may issue a writ if the bureau did not explain its decision well enough to inform the parties and the court of the decision's basis. *State ex rel. Aaron Rents, Inc. v.*

6

*Ohio Bur. of Workers' Comp.*, 129 Ohio St.3d 130, 2011-Ohio-3140, 950 N.E.2d 551, ¶ 10.

### B. The bureau abused its discretion

{¶ 22} We conclude that the bureau abused its discretion by assigning OKI to manual classification 9443. OKI does not fit the definition of that classification. And even if the bureau is correct that classification 9443 is the best fit for OKI, the bureau did not adequately explain why that is so—i.e., the bureau did not take into account the degree of hazard OKI's business presents to its employees. In other words, the bureau failed to inform the parties and this court why the hazards to which OKI's employees are exposed are most similar to the hazards to which the employees of the other businesses covered by manual classification 9443 are exposed. *See* R.C. 4123.29(A)(1); Ohio Adm.Code 4123-17-08(A)(1)(a) and (D).

*1. Manual classification 9443 applies to "public employers" that are "taxing districts," but OKI is neither*

{¶ 23} Manual classification 9443 is a "state special" classification that is not part of NCCI's manual; the bureau drafted the classification itself. Manual classification 9443 is among a group of classifications that apply to "public employers" that are "taxing districts." *Accord* Ohio Adm.Code 4123-17-34 (setting rates for "public employer taxing districts" as shown in Appendices A and B to that rule, which include manual classification 9443). According to the bureau, manual classification 9443 defines a "special taxing district" as "[a] separate and distinct territorial division of government throughout which a tax may be levied to promote or achieve a public purpose"; also, the employer cannot be "a county office."

*a. OKI is not a public employer for workers' compensation classification purposes*

{¶ 24} As the Tenth District pointed out, "an employer must be classified either as a 'private employer' under R.C. 4123.01(B)(1)(b) or a 'public employer' under R.C. 4123.01(B)(1)(a)." 2021-Ohio-2001, 174 N.E.3d 55, at ¶ 4. OKI argues

that despite receiving some of its funding from public sources and designating itself a "public body" in its articles, it is not a public employer for workers' compensation-classification purposes. We conclude that OKI is correct.

{¶ 25} As used in R.C. Chapter 4123, "public employer" means "[t]he state, including state hospitals, each county, municipal corporation, township, school district, and hospital owned by a political subdivision or subdivisions other than the state." R.C. 4123.01(B)(1)(a) and (J). OKI is not any of these types of entities. It is therefore not a "public employer" as that term is used in the workers' compensation context.

{¶ 26} "Private employer" means "[e]very person, firm, professional employer organization, alternate employer organization, and private corporation, including any public service corporation" with one or more employees or that is otherwise required to pay into the state fund. R.C. 4123.01(B)(1)(b) and (H). The Tenth District concluded that OKI was not a private employer, in large part because it does not fit the dictionary definition of a "public service corporation," which involves providing utility services to the public. 2021-Ohio-2001, 174 N.E.3d 55, at ¶ 7-9, 31. The Tenth District also found it "difficult to conceive of OKI as a 'private corporation,' as that term is used in R.C. 4123.01(B)(1)(b), when OKI's Restated Amended Articles of Agreement identify OKI as a public body." (Emphasis deleted.) *Id.* at ¶ 31.

{¶ 27} OKI does not fit into any of the categories of public employers in R.C. 4123.01(B)(1)(a), which are delineated with great specificity. The fact that OKI calls itself a "public body" in its articles (apparently for the purpose of receiving federal transportation funds), does not override the terms of the Ohio Revised Code and make OKI a "public employer" for workers' compensation purposes when it does not meet the statutory definition of one.

{¶ 28} In contrast to the specific categories listed in the definition of "public employer," the categories in R.C. 4123.01(B)(1)(b)'s definition of "private

employer" are much broader. OKI is best slotted within that definition as a private (nonprofit) corporation.

### b. OKI is not a "taxing district"

{¶ 29} We also conclude that OKI is not a "taxing district." OKI is not a "territorial division of government throughout which a tax may be levied." In fact, as the bureau acknowledges, OKI has no taxing authority.

{¶ 30} The Tenth District based its decision that OKI could be classified as a "public employer, taxing district" in part on its observation that "[i]n addition to traditional public employers such as counties, cities, townships, and villages, Ohio Adm.Code 4123-17-34 identifies public libraries, special public universities, and public hospitals as 'public employer, taxing districts,' even though such public bodies do not have independent taxing authority." 2021-Ohio-2001, 174 N.E.3d 55, at ¶ 27. The Tenth District erred when it stated that the other entities listed in Ohio Adm.Code 4123-17-34 were not taxing districts. Unlike OKI, by statute, those entities *do* have the ability to seek tax levies. *See* R.C. 5705.23 (library tax levy); R.C. 3375.07 (county-free-public-library tax levy); R.C. 3375.09 (township library tax levy); R.C. 3375.17 (school-district free-public-library tax levy); R.C. 3375.23 (county-library district-tax levy); R.C. 3375.31 (regional-library tax levy); R.C. 3375.42 (library-services tax levy); R.C. 5705.22 (county-hospital levy); R.C. 513.09 (township- or municipal-hospital levy); R.C. 3355.08 (university-branch-district tax levy); R.C. 3358.11 (state-community-college-district tax levy); R.C. 3357.11 (technical-college tax levy); R.C. 3354.12 (community-college-district tax levy); R.C. 3349.13 (municipal-university tax levy).

{¶ 31} Because it is not a public employer or a taxing district, OKI does not fit the definition set forth in manual classification 9443 or Ohio Adm.Code 4123-17-34 and its appendices.

*2. The bureau assigns each employer the manual classification that "best describes" the employer's business*

**{¶ 32}** If an employer does not fit the definition of any particular manual classification, the bureau's charge is "to assign the one basic classification that *best* describes the business of the employer within a state." (Emphasis added.) Ohio Adm.Code 4123-17-08(D).

**{¶ 33}** We have recognized that "absolute precision in occupational classification is often impossible." *Progressive Sweeping Contrs., Inc.*, 68 Ohio St.3d at 395, 627 N.E.2d 550; *see also State ex rel. RMS of Ohio, Inc. v. Ohio Bur. of Workers' Comp.*, 113 Ohio St.3d 154, 2007-Ohio-1252, 863 N.E.2d 160, ¶ 7. The record in this case contains an example of this imprecision, i.e., the best-fit approach: for decades, some of OKI's employees were classified under former manual code 8742, which applied to outside collectors or salespeople, even though OKI's employees did not engage in collections or sales. *See* 2021-Ohio-2001, 174 N.E.3d 55, at ¶ 56 (the magistrate noted that "while the previous classification of some of OKI's staff [as] 'outside salespersons' does not coincide [sic] with the fact that these individuals performed no sales duties, the manual [classification] could well have been the best fit for persons performing occasional consulting and conferencing duties outside the office setting and, thus, involving some travel"). Although the bureau has authority to create a new classification in exceptional circumstances when no existing classification "substantially reflect[s] hazard" for a particular business, *Progressive Sweeping Contrs., Inc.* at 396, OKI does not argue that the bureau should have created a new classification specifically for it.

**{¶ 34}** Because the bureau is required to determine the manual classification that *best* describes an employer's business, this court has traditionally been deferential to the bureau's determinations. *E.g.*, *RMS of Ohio, Inc.* at ¶ 6 ("We have long recognized the challenges involved in establishing premium rates for workers' compensation coverage and have repeatedly confirmed the deference due the agency in these matters"); *Progressive Sweeping Contrs., Inc.* at 395 ("judicial

deference to [the bureau's] occupational classification is required in all but the most extraordinary circumstances").

3. *The bureau has an obligation to explain its decision and to base that decision on the degree of hazard, but here, it did neither*

{¶ 35} Despite this court's past deference to the bureau's classification determinations, "[t]he agency's expertise [in premium matters] 'does not supersede the duty this court has imposed upon * * * the bureau to adequately explain [its] decisions.' " (Brackets and ellipsis added.) *Aaron Rents, Inc.*, 129 Ohio St.3d 130, 2011-Ohio-3140, 950 N.E.2d 551, at ¶ 10, quoting *State ex rel. Craftsmen Basement Finishing Sys., Inc. v. Ryan*, 121 Ohio St.3d 492, 2009-Ohio-1676, 905 N.E.2d 639, ¶ 15. The purpose of this requirement is to "inform the parties and potentially a reviewing court of the basis of the [bureau's] decision." *State ex rel. Yellow Freight Sys, Inc. v. Indus. Comm.*, 71 Ohio St.3d 139, 142, 642 N.E.2d 378 (1994). We have rejected the implication "that in premium-related matters, if the bureau says something is so, it is so, and that is explanation enough." *Craftsmen Basement Finishing Sys., Inc.* at ¶ 18. Rather, "[t]he sufficiency of the bureau's order must * * * be measured against a larger audience than just that agency, and what may be self-explanatory to the bureau may not be self-explanatory to others." *Id*. We reiterate these principles today.

{¶ 36} In this instance, the bureau stated in its final order reclassifying OKI only that "it is [the bureau's] practice to designate an entity a 'special district' where two or more taxing districts or political subdivisions unite to provide a public service." But the bureau did not explain why its practice is justified by such entities' degree of hazard. In its merit brief, the bureau argues that "[t]here is no requirement that manual [classification] 9443 define[s] 'special district.' The [bureau] had drafted the language and understood what it meant." This is an insufficient explanation.

**{¶ 37}** Our holdings indicate that the bureau must base its classification decision on the degree of hazard in the employer's business. *E.g.*, *Craftsmen Basement Finishing Sys., Inc.* at ¶ 19-21; *RMS of Ohio, Inc.*, 113 Ohio St.3d 154, 2007-Ohio-1252, 863 N.E.2d 160, at ¶ 20-22. Because the classifications themselves are based on degree of hazard, in some cases, the bureau can sufficiently explain its analysis by simply explaining why an employer meets the definition of the assigned classification. *E.g.*, *RMS of Ohio, Inc.* at ¶ 20-22 (classifications involving similar work in different locations were differentiated by the degree of hazard presented by each location; the classification based on location was upheld). But that is not the case when the bureau is classifying a business based on "best fit" when the employer does not meet the definition of a classification.

**{¶ 38}** This case is somewhat similar to *Craftsmen Basement Finishing Sys., Inc.*, 121 Ohio St.3d 492, 2009-Ohio-1676, 905 N.E.2d 639. In that case, the employer and the bureau were in a dispute over whether employees who entered potential customers' homes (which were not then under construction) to take measurements and to provide estimates for basement remodeling were best classified under manual code 8742, "outside salespersons," or 5605, "construction estimators." *Id*. at ¶ 1-3. The bureau had reassigned the employees from the former classification to the latter, which had a higher premium because it entailed more occupational risk—specifically, exposure to construction hazards at the job site. *Id*. This court explained: "It is not enough that the bureau consider a prospective customer's home to be a job or construction site. There also must be an increased construction hazard to the Craftsmen employee. The bureau's order did not discuss that requirement." *Id*. at ¶ 20.

**{¶ 39}** In this case, we conclude that it is not enough for the bureau to simply consider OKI—a private employer that cannot levy taxes—to be a public employer and a taxing district without first explaining whether an increase in hazard over OKI's former manual classifications makes 9443 the manual classification that

12

best describes OKI's business. As this court has observed, "[t]he bureau should not be permitted under the guise of administrative convenience to shoehorn an employer into a classification which does not remotely reflect the actual risk encountered." *Progressive Sweeping Contrs., Inc.*, 68 Ohio St.3d at 396, 627 N.E.2d 550.

## III. CONCLUSION

{¶ 40} In light of the foregoing, we reverse the Tenth District's judgment and issue a limited writ of mandamus ordering the bureau to evaluate the degree of hazard in OKI's business and to explain—if the bureau so concludes after conducting that analysis—why manual classification 9443 best describes OKI's business, with respect to the degree of hazard.

Judgment reversed<br>and limited writ granted.

O'CONNOR, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

————————————

Taft, Stettinius & Hollister, L.L.P., Lauren A. Kemp, and Samuel M. Duran, for appellant.

Dave Yost, Attorney General, and John Smart, Assistant Attorney General, for appellee.

————————————